CHASEZ, Judge.
Plaintiff, Bank of Louisiana, filed suit to collect $22,017.68 from defendant, Dr. Charles J. Ganucheau, together with interest and costs from date of judicial demand until paid, said sum allegedly due under a professional service contract. Plaintiff also claims a service charge of 1 Yi% is due on the unpaid balance of assigned accounts.
From a judgment rendered by the District Court in favor of plaintiff and against the defendant in the amount of $8,665.46, plus legal interest from judicial demand and all costs, the defendant has appealed suspensively. The plaintiff has answered the appeal demanding an increase in the amount awarded, specifically the sum of $22,272.91, together with interest and costs.
Plaintiff and defendant entered into an agreement titled “Professional Account Service” on March 1, 1965, which was effective until its termination in September, 1967.
The contract entails the doctor charging his patients for his professional services and these charges or accounts receivable would in turn be delivered to the bank. After the charges were “deposited” the bank would then credit the doctor’s account with the amount thereof, less a 5% discount and a 3!% reserve. Thus, 8% was to be deducted from each deposit. The reserve charge of 3% was to be credited to a separate demand account until the bank accumulated a reserve equal to 15% of the total outstanding amounts assigned to the bank by the doctor. During the course of the contract this amount was later changed to 25% The bank was to send statements to the patients and collect the payments due. A service charge of 1%'% was charged to patients who did not pay their account timely. If the patients did not pay this charge, or the account be reassigned to the doctor, then the doctor was to become responsible for payment of the service charge. The agreement further provided that it was within the sole discretion of the bank that assigned patient accounts not collected within 90 days after credit could be reassigned and recoursed to the physician and his account debited accordingly.
Plaintiff alleges that $22,017.68 is due under the agreement. This sum was reputed to represent the accounts recoursed to the defendant in September, 1957, less an accumulated reserve of $8,854.00. The total accounts recoursed is alleged to be $31,072.-91. Plaintiff asserts it only seeks collection of those accounts over $3.00 that were recoursed to the doctor. The total accounts recoursed is disputed by the defendant’s accountant, who asserted that the figure should be $32,466.16.
Plaintiff, through the testimony of Mr. Kenneth Stiegler, Auditor of the Bank of Louisiana asserted that a total of $109,-106.67 was assigned to the bank by the defendant under the contractual agreement. Stiegler also testified that $102,257.04 was credited to the defendant’s account. Defendant’s accountant, T. B. Waggoner, testified that in reconstructing defendant’s *500 transactions with the bank he determined that some $110,000.00 to $118,000.00 had been referred to the bank by the doctor and, after discount and reserve deductions, defendant’s account was credited with $101,089.13.
At the inception of the relationship, plaintiff sent statements to the defendant on a month to month basis. However, for a five month period, from September, 1965 through January, 1966, and a twelve month period, from April, 1966 through March, 1967, no statements were sent, although repeated demands by the defendant or his accountant were made. Through much of the existence of his agreement the defendant was unable to determine his own finances or his account with the Bank of Louisiana. In fact, defendant asserted that his finances were in such a state that his income tax statement for one year was as much as $9,000.00 overstated, which he alleges resulted from plaintiff’s misstatement of his account. Defendant also testified that he was never credited by the bank with some $1,182.00 in deposits.
In reality, the figures presented are not determinative of the transactions which took place concerning the defendant’s account as the evidence given relating to the total amount assigned by the defendant defies accuracy. Total collections of the bank were reputed by the defendant’s accountant to be $97,288.07. The bank never presented a figure for their total collections. Several figures and totals representing numerous items were introduced as evidence and made part of the record, but no clear-cut understanding of the account has been achieved.
The trial court determined that money was owed by Dr. Ganucheau to the bank. In arriving at a settlement he adopted the figures of defendant’s accountant, T. B. Waggoner, as being more suitable to per-ceptivity. It was observed by the trial judge that both the total amounts paid by patients and service charges collected were unavailable.
The court also recognized that there were discrepancies in various statements submitted by the bank to either the defendant or his accountant.
We are certain that the judge in the trial court has attempted to arrive at a fair determination of this case; however, we are convinced that the inadequacy of the information and evidence introduced into the record has done nothing more than confuse the case and cloud the issue. The trial judge in his written reasons for judgment stated:
"The loss of certain records, discrepancies in the voluminous exhibits introduced and the conflicting testimony of the ‘parties and their witnesses compounds the Court’s inability to resolve this lawsuit with any degree of exactitude or certainty.”
We wholeheartedly agree. We are thus compelled to remand this case before a just and fair determination can be given to both parties.
An accounting must be made utilizing all the available records and data retained by both litigants in reference to the issue involved.
Mr. Stiegler in his testimony asserted that the bank has in its records, through its film process or ledger books, a compilation of its transactions with the defendant. We are convinced from the discrepancies and conflicts shown in the record that an impartial accounting is necessary for the minute examination, consideration, and comparison of the financial records of plaintiff and defendant. Accordingly, an expert knowledgeable in the ways of accounting procedure should be appointed to determine what is essentially an accounting problem. In assisting the analysis, all financial data concerning the account of Dr. Ganucheau should be produced by the bank. Reciprocally, the financial records, relative to the issue, of Dr. Ganucheau, be they in his or his accountant’s possession, should also be provided.
*501 A fair accounting cannot be made until all the records of the bank and defendant which concern this case are introduced into evidence.
In Breen v. Downey, 34 La.Ann. 1217 (1882) the court quoted from Spraggins v. White’s Executors 4. Mart. (N.S.) 297 at 298 (1826);
“It is a matter of surprise to us that in cases like this, where the law authorized courts to aid their investigation by placing accounts before referees, the Judges of the first instance neglect or refuse to profit by their assistance. We think it would greatly promote the ends of justice to send all such cases before men accustomed to the examination and settlement of accounts; it is almost impossible Judges can examine them with the same accuracy or arrive at as exact results.”
We are of the same opinion after long and detailed examination of the record.
We find this particularly true in view of the fact that counsel for the bank revealed, in argument before this court, that the records concerning this Professional Service Account agreement were available, but not introduced into the record.
It is therefore ordered that the Judgment appealed from be annulled and set aside and that this case be remanded to the Twenty-Fourth Judicial District Court in and for the Parish of Jefferson, State of Louisiana, with instructions to submit for examination all of the accounts involved in said case to auditors appointed by the court so that they may be introduced in evidence and considered by the District Court Judge along with such other evidence as may be deemed necessary by the trial Judge for rendition of his judgment. Costs of this appeal to be paid by plaintiff; all other costs to await a final determination of the litigation.
Reversed and remanded.